**FILED**
**Jul 15, 2021**
**12:12 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Dustin Morton,** | ) | **Docket No. 2021-06-0129** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Morsey Constructors, dba Harper** | ) | |
| **Industries,** | ) | **State File No. 5478-2020** |
| **Employer,** | ) | |
| **And** | ) | |
| **Zurich American Ins. Co.,** | ) | |
| **Carrier.** | ) | **Judge Thomas Wyatt** |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

Dustin Morton seeks additional medical treatment for injuries suffered in a January 2020 accident. Specifically, he requests that Morsey Constructors schedule a return visit to the authorized physician for pain in his neck, upper back, and arms. Morsey contends that Mr. Morton has not shown that the alleged pain is caused by work-related injuries. But this expedited hearing is about a request for additional medical treatment; proof of medical causation is not required to obligate an employer to provide treatment. So, after a July 12, 2021 hearing, the Court holds that Mr. Morton is entitled to the requested treatment.

### History of Claim

Mr. Morton, an ironworker, suffered a work injury on January 17, 2020, when a 32-foot long insulated metal panel, weighing 250 to 300 pounds, fell from the roof and struck him on his head and left shoulder. The impact caused him to twist and fall on his right knee. Mr. Morton stated that the impact immediately "blew out" his knee.

Morsey immediately transported him to an urgent care clinic. The medical records confirm that Mr. Morton reported a similar mechanism of injury: "Stated that something fe[ll] off of a building and hit him in the left shoulder and his head and somehow he twisted his foot or leg and hurt his knee." Providers diagnosed a right-knee strain, but no other

1

diagnoses for other body parts are listed. After a follow-up visit and an MRI, the provider referred him to an orthopedist, and Mr. Morton chose Dr. David Moore from a panel of physicians.

Records from the first visit with Dr. Moore on February 20, echo the mechanism of injury previously described: "He states that [a panel] hit his head and shoulder initially knocking him off balance. He twisted his knee in the process." Dr. Moore examined the knee and recommended surgery, which he later performed. Afterward, Mr. Morton continued treating and participated in physical therapy for several months. On November 10, Dr. Moore placed him at maximum medical improvement, removed the work restrictions, and assigned an eight-percent impairment rating. Mr. Morton did not tell Dr. Moore about, nor seek treatment for, neck, upper back, or arm symptoms.

After his release from treatment, Mr. Morton returned to light-duty work at Morsey. While working, he noticed pain in his neck and between his shoulder blades and numbness in his arms. He mentioned his symptoms to his supervisor but did not ask for treatment.

During a lay-off, he worked in a fabrication shop for Palmer Construction. He described the work he did at Palmer as lighter than full-duty construction work. Despite that, he experienced increased neck and upper back pain and numbness in his arms when he lifted objects at Palmer.

Mr. Morton stated he could not perform full-duty construction work because of the symptoms he endures when he lifts items. He described the pain as feeling "like I've got a knee in between my shoulders." He stated he had not injured his neck, upper back, or arms since the injury at Morsey.

On cross-examination, Mr. Morton said he "casually" mentioned "soreness" in the neck and shoulders with the nurse case manager and his work supervisor, but he agreed he never asked for treatment for these body parts. He explained, "In my line of business, I've always been under the assumption, like, if you didn't say something as soon as it happened, you [were] just kind of out of luck."

The parties stipulated that Mr. Morton first requested treatment for the neck, upper back, and arms through his attorney on February 2, 2021. Afterward, Morsey's attorney sent Dr. Moore a letter asking two questions:

1. "At any time, has Mr. Morton requested treatment for or otherwise indicated that he sustained any injury to his neck or shoulder as a result of the at-work accident that occurred on January 17, 2020?"
2. "At any point have you deemed it necessary to recommend any treatment or evaluation for Mr. Morton's neck or shoulder as it related to the at-work injury on January 17, 2020?"

2

Dr. Moore checked "no" to both questions in his February 8 reply.

Mr. Morton argued that he timely reported his injury and told the urgent care providers and Dr. Moore that a large roofing panel hit his head and shoulder. The providers all focused on the knee injury because it was the most apparent. Now that his attempts to return to work have revealed the nature and persistence of his neck, upper back, and arm symptoms, he claims entitlement to the requested return to Dr. Moore for evaluation and treatment.

During the hearing, Morsey agreed that the panel hit Mr. Morton's neck and shoulder; however, for over a year, he did not request treatment for neck, upper back, or arm symptoms. Thus, Morsey contended he should be required to offer medical proof that the need for the requested treatment is work-related. It also argued that the symptoms Mr. Morton experienced at Palmer severed any causative connection between the injury at Morsey and his neck, upper back, and arm symptoms.

**Findings of Fact and Conclusions of Law**

To prove a compensable injury, Mr. Morton must show that his alleged injuries arose primarily out of and in the course and scope of employment. This includes the requirement that he prove a work-related incident identifiable by time and place of occurrence. Further, he must show "to a reasonable degree of medical certainty that [the incident] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." *See* Tenn. Code Ann. § 50-6-102(14) (2020).

Applying these principles, Mr. Morton testified that a large, heavy insulated panel struck his head and left shoulder. He described a similar mechanism of injury to the urgent care and Dr. Moore. Morsey agreed that this occurred. Therefore, the Court holds Mr. Morton is likely to prove a specific incident, identifiable by time and place, at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1).

Morsey argued that just because the roofing panel hit his head and shoulder does not necessarily mean that it injured those or other body parts. It correctly points out that Mr. Morton has not shown with medical proof that this incident was the primary cause of his current need for treatment for his neck, upper back, and arm symptoms.

However, at an expedited hearing, proof of medical causation is not required to obligate an employer to provide treatment. *See McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015) (At an expedited hearing, an employee must "present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits[.]"). Further, where an employee

3

presents sufficient evidence to support that a work event resulted in an injury, that evidence may support an order compelling an employer to provide treatment with a panel doctor. *See Lewis v. Molly Maid,* 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at \*8-9 (Apr. 20, 2016). Moreover, "[t]he nature and extent of the employee's injuries, and the issue of medical causation, usually come to light in the course of treatment of the employee's injuries." *Quaker Oats Co. v. Smith,* 574 S.W.2d 45, 48 (Tenn. 1978).

Mr. Morton testified that he told the providers and in particular Dr. Moore that a heavy roofing panel hit his head and left shoulder. Dr. Moore stated in his letter that Mr. Morton did not request treatment for his neck and shoulders. The two statements are not necessarily incompatible. Stated another way, Mr. Morton described to the doctors the panel hitting his head and shoulder, but he did not request treatment for them. But the possibility remains that he could have injured his neck and shoulders from the accident. That will be for a doctor to decide.

The Court likewise places little weight on the fact that the medical records focus almost exclusively on the knee rather than other body parts. This merely proves that Mr. Morton might not have complained of the symptoms in the neck, upper back, or arms; it does not prove that his alleged injuries did not arise primarily from the work accident.

The bedrock of the Workers' Compensation Law is that an employer must provide reasonably necessary treatment when an employee reports a work injury. Tenn. Code Ann. § 50-6-204(a)(1)(A). On this record, Morsey cannot evade this obligation. Mr. Morton has presented sufficient evidence at this interlocutory stage from which this Court concludes that he is likely to prevail at a hearing on the merits regarding his request for additional medical benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Morsey or its workers' compensation carrier shall authorize treatment with Dr. Moore under Tennessee Code Annotated section 50-6-204 for Mr. Morton's neck, upper back, and arm symptoms.

2. This case is set for a scheduling/status hearing on **October 19, 2021, at 2:00 p.m. Eastern Time/1:00 p.m. Central Time**. You must call 615-741-3061 or toll-free at 855-747-1721 to participate. Failure to call might result in a determination of the issues without your participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the

4

seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED July 15, 2021.**

*Thomas Wyatt*

**JUDGE THOMAS WYATT**
**Court of Workers' Compensation Claims**

### APPENDIX

Exhibits:
1. Affidavit of Dustin Morton
2. Employee's Medical records
3. Employer's Exhibits
   a. Questionnaire, Dr. Moore
   b. Emails between Mr. Morton and the claims adjuster, Ms. Moxley
   c. Panel
   d. Deposition Transcript, Dustin Morton
4. Employer's Medical Records
5. Facebook photos

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employee's Witness and Exhibit List
5. Employee's Position Statement
6. Employer's Witness List
7. Employer's Exhibit List
8. Employer's Brief

5

## CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent as indicated on July 15, 2021.

| Name | Certified Mail | Regular Mail | Email | Sent to: |
|------|----------------|--------------|-------|----------|
| Jeffrey Boyd, employee's attorney | | | X | jboyd@borenandboyd.com ataylor@borenandboyd.com |
| Allen Callison, employer's attorney | | | X | Allen.callison@mgclaw.com Carmen.Perez@mgclaw.com |

*Penny Shrum*

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

6



## Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on _____      ☐ Other Order filed on _____

issued by Judge _____

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties
**Appellant(s) (Requesting Party):** _____ ☐Employer☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s) (Opposing Party):** _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name: _____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)            RDA 11082

9. My expenses are:

Rent/House Payment $_____ per month    Medical/Dental  $_____ per month

Groceries        $_____ per month    Telephone       $_____ per month
Electricity      $_____ per month    School Supplies $_____ per month
Water            $_____ per month    Clothing        $_____ per month
Gas              $_____ per month    Child Care      $_____ per month
Transportation   $_____ per month    Child Support   $_____ per month
Car              $_____ per month
Other            $_____ per month (describe: _____)

10. Assets:

Automobile              $_____    (FMV) _____
Checking/Savings Acct.  $_____
House                   $_____    (FMV) _____
Other                   $_____    Describe: _____

11. My debts are:

Amount Owed                    To Whom

_____                _____
_____                _____
_____                _____
_____                _____

I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                    RDA 11082